UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AL RUSHAID PETROLEUM
INVESTMENT COMPANY and AL
RUSHAID TRADING COMPANY,

           Plaintiffs,

v.                                     Case No.: 6:21-cv-2062-WWB-EJK

SIEMENS ENERGY INC.,

           Defendant.
                                    /

## ORDER

THIS CAUSE is before the Court on Defendant's Motion to Dismiss (Doc. 40) and Plaintiffs' Opposition (Doc. 41) thereto. For the reasons set forth below, Plaintiffs' Opposition will be stricken and Defendant's Motion will be granted.

**I.    BACKGROUND**

Plaintiffs, Al Rushaid Petroleum Investment Company ("**ARPIC**") and Al Rushaid Trading Company ("**ARTC**"), are Saudi Arabian companies that partner with foreign companies seeking to do business in Saudi Arabia. (Doc. 39, ¶¶ 1, 24–28). More than thirty years ago, ARTC entered into an exclusive Sales Representation Agreement ("**SRA**") with Dresser-Rand International B.V. ("**DRIBV**"). (*Id.* ¶¶ 29, 31). Thereafter, DRIBV and ARTC entered into an Aftermarket Sales Representation Agreement. (*Id.* ¶ 35).

In about March 2009, ARTC procured a contract with the Saudi Arabian Oil Company ("**Aramco**") for the Dresser-Rand Group ("**DRG**"). (*Id.* ¶ 42). The agreement with Aramco required DRG and ARTC to fulfill the contract by creating a joint venture.

(*Id.* ¶¶ 43, 50–51). ARPIC was selected to enter into the joint venture and a Business Venture Agreement ("**BVA**") was executed with a DRG affiliate. (*Id.* ¶¶ 61, 65). The BVA was amended in April 2013. (*Id.* ¶ 74). At the same time, an Addendum to the SRA was entered. (*Id.*).

In 2014, Defendant, Siemens Energy Inc., announced that it would acquire DRG through a friendly takeover, which was completed in mid-2015. (*Id.* ¶¶ 98, 110). At the time that Defendant acquired DRG, it already had a longstanding relationship with a Saudi Arabian sales agent, which performed essentially the same function as ARTC performed for DRG. (*Id.* ¶¶ 110–111). Plaintiffs allege that because of the acquisition, their participation in the joint venture and business became unnecessary and Defendant undertook a series of steps to transition business away from the joint venture for its own benefit and to deprive Plaintiffs of their rights under the agreements with DRG. (*Id.* ¶¶ 113–116, 125–126, 133). As a result, Plaintiffs allege claims for tortious interference (Counts One through Seven, and Counts Nine and Ten), unfair competition (Count Eight), and unjust enrichment (Count Eleven). (*Id.* ¶¶ 137–245).

## II.   LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir.

2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III.   DISCUSSION

As an initial matter, Plaintiffs' Opposition fails to comply with the page limitations set forth in Local Rule 3.01(b). As the Court warned Plaintiffs in the September 14, 2022 Order (Doc. 38), Rule 3.01(b) requires that responses "may be 'no longer than twenty pages *inclusive of all parts*[.]'" (*Id.* at 1 n.1 (citing M.D. Fla. R. 3.01(b)) (emphasis added)). Nevertheless, Plaintiffs' Opposition contains twenty pages of argument accompanied by two additional pages holding the required signatures and certificate of service. (Doc. 41 at 20–22). Plaintiffs were warned that failure to comply could result in the striking of filings without notice or leave to refile. (Doc. 38 at 1 n.1). Therefore, Plaintiffs' Opposition will be stricken and will not be considered. Although, based on the foregoing, the Court could grant Defendant's Motion as unopposed, in the interests of fairness and finality, the Court will consider the merits of the arguments raised therein.

Turning to the merits of the Motion, Defendant argues that Plaintiffs' First Amended Complaint (Doc. 39) fails to correct the shotgun pleading issues addressed in the Court's

3

September 14, 2022 Order.  In the September 14, 2022 Order, the Court noted that Plaintiffs' pleading lumped multiple claims based on differing theories and distinct transactions and occurrences into a handful of counts making it nearly impossible for Defendant to frame a responsive pleading.  (Doc. 38 at 8).  In the First Amended Complaint, Plaintiffs have adequately separated their various claims and theories into discrete counts.  Although the Court agrees that the allegations could use further refinement, this is almost always the case and does not push the First Amended Complaint over the line as a shotgun pleading.  Instead, the majority of Defendant's arguments are better suited to a failure to state a claim analysis.

Next, Defendant argues that ARPIC's tortious interference claims (Counts One through Seven) fail because Defendant, as the parent corporation of DRG, is not a stranger to the business relationship.  "Under Florida law, a claim for tortious interference cannot lie where the alleged interference is directed at a business relationship to which the defendant is a party." *Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, 1338 (S.D. Fla. 2007).  "In other words, 'the interfering defendant must be a third party, a stranger to the business relationship.'" *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 (11th Cir. 2001) (quoting *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999)).  "If the First Amended Complaint includes allegations that [ ] Defendant has 'any beneficial or economic interest in, or control over' the Agreement then that Defendant is not a 'stranger.'" *Alticor Inc. v. UMG Recordings, Inc.*, No. 6:14-cv-542-Orl, 2015 WL 736346, at *2 (M.D. Fla. Feb. 20, 2015) (quoting *Mattocks v. Black Ent. Television LLC*, 43 F. Supp. 3d 1311, 1319 (S.D. Fla. 2014)).  Nevertheless, the existence of a parent-subsidiary relationship alone does

not preclude a claim for tortious interference under Florida law. *See Hyatt Corp. v. Epoch-Fla. Cap. Hotel Partners, Ltd.*, No. 6:07-cv-1260-Orl, 2008 WL 490121, at *4 (M.D. Fla. Feb. 20, 2008) (citing *Gossard v. Adia Servs., Inc.*, 723 So. 2d 182, 184–85 (Fla. 1998)).

Here, ARPIC alleges that it entered into the BVA and amended BVA with DRG prior to DRG's acquisition by Defendant. However, ARPIC also alleges that Defendant has interfered specifically by using its control over DRG to maximize the profitability of the business held by the Joint Venture for its benefit. In fact, Plaintiffs allege that one of the reasons for the acquisition of DRG was Defendant's interest in benefiting from the Joint Venture. (Doc. 39, ¶¶ 99, 107–08). Thus, based on the allegations of the First Amended Complaint, Defendant allegedly had both a supervisory interest in how the Joint Venture was conducted and a financial interest in how the BVA was performed and, therefore, ARPIC has failed to allege that Defendant was a stranger to the business relationship.

However, even though Defendant was not a stranger to the relationship, ARPIC's claims may still proceed if it alleged that Defendant's actions were purely malicious or Defendant employed improper methods. *See Mattocks*, 43 F. Supp. 3d at 1319. With respect to malice, "[i]t is only when malice is the sole basis for interference that it will be actionable." *McCurdy v. Collis*, 508 So. 2d 380, 383 (Fla. 1st DCA 1987); *see also Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1280 (11th Cir. 2015) ("[E]ven if the plaintiff has an existing, terminable-at-will contract, the defendant's interference to protect its economic interests is privileged unless the plaintiff alleges a purely malicious motive divorced from any legitimate competitive economic interest." (quotation omitted)). Here, although Plaintiffs make conclusory allegations of malice, Plaintiffs explicitly allege

5

that Defendant's actions were motivated, at least in part, by legitimate business interests. (*See, e.g.*, Doc. 39, ¶¶ 10–11, 14, 113, 115–116, 130). Thus, the purely malicious exception does not apply in this case.

"Nonetheless, even where 'there is a qualified privilege to interfere . . . the privilege carries with it the obligation to employ means that are not improper.'" *Collier HMA Physician Mgmt., LLC v. NCH Healthcare Sys., Inc.*, No. 2:18-cv-408-FtM, 2019 WL 277733, at *9 (M.D. Fla. Jan. 22, 2019) (quoting *McCurdy*, 508 So. 2d at 384). "Improper means which will defeat the competition privilege include physical violence, misrepresentations, intimidation, conspiratorial conduct, illegal conduct and threats of illegal conduct." *Id.* (quoting *Bluesky Greenland Env't Sols., LLC v. 21st Century Planet Fund, LLC*, 985 F. Supp. 2d 1356, 1367 (S.D. Fla. 2013)); *see also Alticor Inc.*, 2015 WL 736346, at *2 (citing Fla. Std. Jury Inst. in Civil Cases § 408.6). ARPIC does not allege that Defendant used physical violence, intimidation, conspiratorial conduct, illegal conduct, or threats of illegal conduct. At best, ARPIC alleges that Defendant caused DRG to bring a meritorious arbitration and to enforce the award against ARPIC and makes conclusory allegations that Defendants conduct was "dishonest," done in "bad faith," "malicious," and "knowing." (Doc. 39, ¶¶ 128–129, 144–146, 154–156, 165–167, 175–177, 185–187, 197–199, 211–212). However, the filing of a proper legal claim and the enforcement of an arbitration award are not illegal and ARPIC's conclusory allegations of bad faith conduct fall short of plausibly alleging improper means. *Shenzhen Kinwong Elec. Co. v. Kukreja*, 574 F. Supp. 3d 1191, 1213–16 (S.D. Fla. 2021); *Int'l Mulch Co. v. Novel Ideas, Inc.*, No. 8:14-cv-3024-T, 2015 WL 12830375, at *4–5 (M.D. Fla. May 13, 2015). Therefore, Counts One through Seven will be dismissed.

Similarly, Defendant argues that ARTC's tortious interference claims arising out of the SRA (Counts Nine and Ten) are barred because Defendant is not a stranger to the agreement and ARTC has not alleged pure malice or improper means. Based on Defendant's ownership and alleged control over DRG, the Court agrees that Defendant was not a stranger to the relationship between ARTC and DRG. Additionally, ARTC alleges that Defendant acted with the intent to maximizes its profits at ARTC's expense, which means the pure malice exception does not apply. As to improper motives, in Count Ten ARTC makes conclusory allegations of malice, dishonest conduct, and illegal means but fails to plead with any specificity what actions constitute improper means. (*See, e.g.*, Doc. 39, ¶¶ 239–241). As to Count Nine, ARTC makes the same conclusory allegations of misconduct and illegal means, but also alleges that Defendant assured ARTC that it intended to pay outstanding commissions. (*Id.* ¶¶ 135–136). While, if false, these statements might support a claim of improper means, ARTC fails to allege that these statements were misrepresentations at the time they were made. Thus, the Court finds that ARTC also failed to adequately allege a claim for tortious interference against Defendant and Counts Nine and Ten will be dismissed.

In Count Eight, ARPIC alleges a claim for common law unfair competition. Although the heading of the claim generally references "False Misrepresentations," the body of the count consists of a paragraph stating various means of unfair competition and conclusory statements regarding Defendant's control over the Joint Venture and the pool of customers, leaving the Court unclear as to what claim is actually being alleged in Count Eight. On this basis alone, the claim can be dismissed. Nevertheless, it can also be dismissed because the conclusory allegation that Defendant and ARPIC "compete for the

same pool of customers" is contradicted by the facts alleged in the First Amended Complaint. Specifically, Plaintiff alleges that their sales agents assist companies in entering and doing business in Saudi Arabia, (*id.* ¶ 1, 26–27, 66), a far cry from Defendant's manufacture of gas turbines and compressors, (*id.* ¶¶ 91–92). Thus, Count Eight can also be dismissed on this basis. *See King Ranch, Inc. v. King Ranch Contractors, LLC*, No. 6:12-cv-597-Orl, 2013 WL 2371246, at *11 (M.D. Fla. May 30, 2013).

Finally, Count Eleven purports to allege a claim for unjust enrichment on behalf of ARTC. "To support a claim of unjust enrichment, a complaint must allege: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Murphy v. Pankauski*, 357 So. 3d 149, 152 (Fla. 4th DCA 2023) (quotation omitted). Defendant argues that ARTC has failed to allege a direct benefit and that the claim is barred by the existence of a written agreement governing the relationship. However, the Court is unable to address the merits of Defendant's arguments because it is entirely unclear what claim ARTC is attempting to allege. In Count Eleven, ARTC alleges that it conferred a direct benefit on Defendant "and/or entities it acquired[.]" (Doc. 39, ¶¶ 243–245). Based on ARTC's use of the "and/or" conjunction, the Court is unclear if ARTC is alleging that Defendant directly benefited from its actions or if it seeks to hold Defendant liable—directly or vicariously—for the conduct of DRG. Because it is unclear exactly what theory of liability ARTC is alleging, this Court would essentially be issuing an advisory opinion on the viability of claims that may or may not have been asserted.

Accordingly, Count Eleven will be dismissed for failure to comply with the minimum pleading standards without further analysis.

IV. **CONCLUSION**

Therefore, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiffs' Opposition (Doc. 41) is **STRICKEN**.
2. Defendant's Motion to Dismiss (Doc. 40) is **GRANTED**.
3. The First Amended Complaint (Doc. 39) is **DISMISSED without prejudice**.
4. The Clerk is directed to terminate all pending motions and close this case.

**DONE AND ORDERED** in Orlando, Florida on September 12, 2023.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record